## 43659. NOGGLE v. THE STATE.
(349 SE2d 175)

BELL, Justice.

The appellant, Richard David Noggle, was convicted of the murder of his girl friend, Annie Mae Arnold, and received a life sentence. He appeals, and we affirm.[1]

At the time of the incident Noggle and Annie Mae Arnold had been living together for three years and had one two-month-old baby boy. On the morning of January 6, 1985, at 12:50 a.m., William Gabriel, Deputy Sheriff of Oglethorpe County, responded to a call placed by Richard Noggle to come to his and Annie Mae's trailer residence. On arrival he found Annie Mae, dressed in her nightgown and bathrobe, lying on top of a coffee table in the living room of the trailer with a bullet wound to her head. Noggle was cradling Annie Mae's head and crying repeatedly, "I didn't mean to shoot her. Help her, please." Annie Mae was pronounced dead minutes later by an emergency medical team.

Gabriel located a rifle, later determined to be the murder weapon, lying on the couch. Noggle's and Annie Mae's baby was found in a playpen next to the victim. He was strapped into a car seat carrier and wrapped in two or three blankets. Next to the child was an open diaper bag, packed with diapers and a cold bottle of milk. Blood was found on the carpet leading from the living room down the hall to Noggle's and Annie Mae's bedroom, as well as on the bedroom door and door handle and on a pair of men's underwear laying on top of the bed.

Two neighbors testified that they had heard a car pull up to Noggle's and Annie Mae's trailer that evening, and that about five minutes later they heard a shot fired. One of them testified that the car sounded like Noggle's.

Three of Annie Mae's brothers testified. Harold Arnold testified that on the evening of January 5, Noggle had stopped by the lounge where he worked, and told him, "Well, I found out some more stuff

---

[1] The murder occurred on January 6, 1985, and Noggle was indicted on May 22, 1985. He was found guilty and sentenced on December 4, 1985. Noggle moved for a new trial on December 12, 1985. The transcript was certified by the court reporter on March 10, 1986. Noggle's motion for new trial was denied on June 18, 1986, and he filed his notice of appeal on June 27, 1986. The case was docketed in this court on July 7, 1986, and orally argued on September 16, 1986.

on that mess that got started, and when I get home there's going to be some hell raised." Harold explained he did not know what Noggle was referring to.

Eddie and Joe Arnold testified that they had been in the home of Noggle and Annie Mae two or three weeks before the shooting. Noggle and Annie Mae were arguing over Noggle losing $200 in a poker game. Both Eddie and Joe saw Noggle threaten to hit Annie Mae. In addition, Joe testified that he heard Noggle say that if she ever tried to leave with the baby he would kill her, and Eddie said that he heard Noggle say he was going to a bar and that Annie Mae "better not take the baby . . . or else."

Evidence was introduced to the effect that Noggle had lost custody of his two other children from previous marriages. Noggle testified that due to two broken marriages and loss of custody, he mistrusted marriage in general, which was the reason he and Annie Mae never married. He also admitted that his mistrust was directed toward Annie Mae and he feared losing his third child.

Noggle testified in his defense, claiming that the shooting was accidental. He said that on the evening of January 5, between six and eleven-thirty p.m. he had driven around Athens, Georgia, drinking from a bottle in his car and stopping at two bars for drinks. Noggle admitted to speaking with Harold Arnold but denied making any threats concerning Annie Mae. He stated that when he came home Annie Mae was in the bed and the baby was in the bassinet. He got undressed and went to bed. At about that time, he said, Annie Mae got up, picked up the baby from the bassinet, and was at the door leading to the hallway when they heard a noise that sounded like a prowler outside. He said that Annie Mae walked down the hall toward the living room. At that time he got up, picked up his rifle, pulled the hammer back, and also walked to the living room. He said that as Annie Mae put the baby in the playpen and stood up, he tried to release the hammer. He said that he did not realize the rifle was aimed at Annie Mae, and that the hammer slipped and the rifle accidentally fired, shooting her in the head. Noggle said he immediately called the police and his brother who lived nearby. Noggle maintained that he did not leave Annie Mae's side until the police arrived. However, he could not account for the blood found elsewhere in the trailer. Noggle admitted to having domestic arguments but denied he had ever threatened to harm or kill Annie Mae.

1. Noggle challenges the sufficiency of the evidence in his first enumeration of error. However, after reviewing the evidence in a light most favorable to the jury's verdict, we find that a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his second enumeration of error Noggle contends that it was harmful error for the trial court to instruct the jury that "should you believe from the evidence as a whole that the defendant is guilty beyond a reasonable doubt, it would be your duty to convict him." We find no error in this charge, because although, as argued by Noggle, "the jury does possess a de facto power of nullification, i.e., a power to acquit the defendant regardless of the strength of the evidence against him . . . it nonetheless is true that if the evidence proves the defendant guilty beyond a reasonable doubt it is the jury's duty to convict. *Felker v. State*, 252 Ga. 351 (13, b) (314 SE2d 621) (1984)." *Cargill v. State*, 255 Ga. 616, 642 (30, d) (340 SE2d 891) (1986).

3. In his third enumeration of error Noggle contends that the trial court erred in instructing the jury as follows: "I charge you that the acts of a person of sound mind and discretion may be inferred to be the product of that person's will, and it may be inferred that a person of sound mind and discretion intends the natural and probable consequences of their [sic] acts, but, of course, both of these inferences may be rebutted,[2] and in any event the burden never shifts to the defendant." We find that this charge is not, as Noggle contends, unconstitutionally burden-shifting under *Francis v. Franklin*, 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985). See *Catchings v. State*, 256 Ga. 241 (11) (347 SE2d 572) (1986); *Lingerfelt v. State*, 255 Ga. 180 (336 SE2d 250) (1985); *Flynn v. State*, 255 Ga. 415 (2, b) (339 SE2d 259) (1986).

4. In his last enumeration of error Noggle contends that the trial court erred in charging the jury that "when witnesses appear and testify in a case such as this, they are presumed to speak the truth unless they are impeached in some manner provided by law." Noggle contends that this charge negates the presumption of innocence and shifts the burden of proof to him, in that the charge requires the jury to believe a state's witness until that witness' testimony has been impeached by him. We disagree.

Although most federal courts of appeals have, under their supervisory power to control proceedings in federal trial court, disapproved of the use of a presumption-of-truthfulness charge substantially similar to the one given here, see *Cupp v. Naughten*, 414 U. S. 141, 143-147 (94 SC 396, 38 LE2d 368) (1973), the Supreme Court has held that the charge is not unconstitutionally burden-shifting, *Cupp v.*

---

[2] We note that the rebuttal language contained in the charge is not contained in the *Suggested Pattern Jury Instructions*, Vol. 2, Criminal Cases, p. 13, prepared by the Council of Superior Court Judges, and is unnecessary, *Tucker v. State*, 249 Ga. 323 (7) (290 SE2d 97) (1982). Since it has potential to confuse the jury as to how much evidence the defendant must produce to rebut the inference if the jury chooses to draw it, see *Sandstrom v. Montana*, 442 U. S. 510, 517 (99 SC 2450, 61 LE2d 39) (1979), we recommend that such rebuttal language not be used in charges such as the one under consideration.

*Naughten,* supra, 414 U. S. ___. Moreover, both this court, *Davis v. State,* 241 Ga. 376, 384 (7) (247 SE2d 45) (1978), and the Georgia Court of Appeals, *Ivie v. State,* 151 Ga. App. 496 (4) (260 SE2d 543) (1979), have held that charges identical in material respect to the one given here are constitutional. We therefore conclude that the charge challenged by Noggle is not unconstitutional. However, because, as noted by the federal circuit courts, see *Cupp v. Naughten,* supra, 414 U. S. at 143-147, the presumption-of-truthfulness charge can be misleading and is of little positive value, we recommend that its use be discontinued.

*Judgment affirmed. All the Justices concur, except Gregory, J., who concurs in the judgment only as to Division 4, and concurs in Divisions 1, 2, and 3, and Hunt, J., who concurs in the judgment only as to Division 3, and concurs in Divisions 1, 2, and 4.*

DECIDED OCTOBER 8, 1986 —
RECONSIDERATION DENIED NOVEMBER 5, 1986.

*Hudson & Montgomery, Jim Hudson, Kenneth Kalivoda,* for appellant.

*Lindsay A. Tise, Jr., District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant General,* for appellee.