S90A0047. BAXTER v. KEMP.
(391 SE2d 754)

BENHAM, Justice.

This is an appeal from the denial of habeas corpus relief. The appellant, Norman Darnell Baxter, was convicted of murder and sen-

---

tenced to death in Henry County. On direct appeal, this court affirmed Baxter's conviction and death sentence. See *Baxter v. State*, 254 Ga. 538 (331 SE2d 561) (1985). The U. S. Supreme Court denied Baxter's application for writ of certiorari. *Baxter v. Georgia*, 474 U. S. 935 (106 SC 269, 88 LE2d 275) (1985). Baxter then applied for writ of habeas corpus in Butts County, alleging in his amended petition 21 grounds for relief. See OCGA § 9-14-40 et seq. After hearings, his petition was denied. We granted Baxter's application for a certificate of probable cause. OCGA § 9-14-52 (b). We now affirm the judgment of the proceedings below.

1. A number of claims Baxter raises in his habeas petition have been previously raised and ruled upon in the direct appeal to this court. *Baxter v. State*, supra. Absent compelling circumstances not present here, these claims may not be relitigated on collateral review. *Gunter v. Hickman*, 256 Ga. 315 (1) (348 SE2d 644) (1986). Thus, the habeas court properly denied relief on grounds 1, 4, 5, 6, 7, 8, 13, 14, 16 and 21 of Baxter's amended petition, as these grounds of the petition raise issues already decided by this court on direct appeal.[1]

In addition, parts of Baxter's second, third and fifteenth grounds for relief were addressed on direct appeal. Relief was properly denied as to those issues raised in grounds 2, 3 and 15 which are successive.[2]

2. A number of grounds for relief concern issues raised for the first time on collateral review. The state contends many of these grounds are procedurally defaulted. Baxter counters that the state has raised the issue of procedural default for the first time on appeal and has, therefore, procedurally defaulted any issue of Baxter's procedural defaults. Moreover, he contends some of these issues were not procedurally defaulted, and if others were, then, given an opportunity, he could demonstrate either cause and prejudice or a miscarriage of justice sufficient to excuse a procedural default.

Our code specifically provides that habeas relief may be granted notwithstanding a procedural default where the petitioner can show cause for noncompliance with a procedural requirement and actual prejudice to the accused. Even absent such a showing, relief remains available to avoid a miscarriage of justice. OCGA § 9-14-48 (d). See

---

[1] These grounds are (1) sufficiency of the evidence; (4) limitations on voir dire examination; (5) and (14) admissibility of the defendant's pretrial statements; (6) admissibility of photographs; (7) (8) and (16) limitations on cross-examination and on presenting evidence; (13) failure to suppress identification testimony of Debbie Moore; and (21) closing argument by the state at the penalty phase of the trial.

[2] Ground 2 raises issues of funds for expert assistance. Except for an *Ake* issue (see Division 8, infra), these issues were decided on direct appeal. *Baxter*, supra at 540 (2 b). Ground 3 raises a *Brady* issue concerning a statement by Kathy Anderson. This issue was decided on direct appeal. Id. at 541 (3 b). Ground 15 includes an issue concerning the court's charge on recent possession of stolen property. This issue was dealt with in Division 14 of the direct appeal. Id. at 546-47.

*Black v. Hardin,* 255 Ga. 239 (336 SE2d 754) (1985); *Valenzuela v. Newsome,* 253 Ga. 793 (325 SE2d 370) (1985).

Procedural default was not an issue below, and we have no habeas court findings on it one way or the other. For example, the state now contends Baxter cannot complain for the first time on habeas of the suppression of an allegedly exculpatory statement by the victim's mother. See *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). Baxter answers that he could not have raised this issue earlier because — due to the state's failure to disclose — he did not know about the statement. Whether this is the case the record does not disclose with certainty, and the habeas court did not decide the issue.

In an appropriate case, we might remand to the habeas court for resolution of issues of procedural default. *Valenzuela v. Newsome,* supra. See also OCGA § 5-6-8; *Harris v. Hall,* 70 Ga. 831, 838-39 (1883). However, in this case we shall simply address the claims on their merits, as did the habeas court.

3. Even assuming the statement by the victim's mother was not disclosed to Baxter,[3] there was no *Brady* violation. As noted in the opinion, Don Bussey was the victim's "old boyfriend who initially was a suspect in the case." *Baxter v. State,* supra, 254 Ga. at 544. The victim's mother stated that Bussey was a criminal, was violent, and had on a previous occasion beaten the victim. In light of the strong evidence establishing Baxter's guilt, he has failed to show that, had the statement been disclosed to the defense, a reasonable probability exists that the outcome of the trial would have been different. *United States v. Bagley,* 473 U. S. 667, 682 (105 SC 3375, 87 LE2d 481) (1985). The habeas court correctly denied relief on this portion of ground 3 of the amended petition.

4. The habeas court did not err in denying relief on grounds 10, 11 and 12. The Unified Appeal Procedure is not unconstitutional for any reason alleged. *Isaacs v. State,* 259 Ga. 717 (7) (386 SE2d 316) (1989). Death-qualification of the jury is not improper. *Pope v. State,* 256 Ga. 195 (7 a) (345 SE2d 831) (1986). See also *Isaacs v. State,* supra at 732 (25). Baxter has introduced no evidence to support his claim that improper discrimination played a part in his case. *McCleskey v. Kemp,* 481 U. S. 279 (107 SC 1756, 95 LE2d 262) (1987).

5. There was no reversible error in the trial court's guilt-phase charge on the presumption of truthfulness as alleged in ground 15 of Baxter's amended petition. *Noggle v. State,* 256 Ga. 383 (4) (349 SE2d 175) (1986).

---

[3] The trial prosecutor testified in the habeas proceedings: "I honestly believe this document was probably turned over to [the defense], but I can't swear to it."

6. The trial court's instructions on the § b (4) aggravating circumstance were not inadequate. OCGA § 17-10-30 (b) (4). The language of the circumstance itself states that it is applicable where "[t]he offender committed . . . murder . . . *for the purpose* of receiving money or any other thing of monetary value." Id. (Emphasis supplied.) Ground 17 of Baxter's petition is without merit.

7. The habeas court properly denied relief on grounds 19 and 20 of Baxter's petition for reasons stated in the court's order.

8. The remaining grounds of error relate, directly or indirectly, to Baxter's allegedly impaired mental condition and incompetence.[4]

(a) The evidence pertinent to these grounds may be summarized as follows:

In May of 1972, Baxter was indicted in Bulloch County for the offense of robbery. On May 23, 1972, following a conference in chambers between the trial judge, the prosecutor, and Baxter's defense attorney, the judge signed an order stating:

> It is the opinion of the court, after hearing evidence, that this defendant, Norman Baxter, is not mentally capable of standing trial at this time and the court finds in favor of the special plea of insanity at the time.
>
> The court finds from the evidence that he is unable to intelligently communicate with his counsel or to make a statement in his own behalf or to cooperate with his attorney.

Baxter was committed to Central State Hospital in Milledgeville. He was returned to Bulloch County after evaluation by Miguel Bosch, M.D., who reported:

> Mr. Baxter was given the diagnosis of: Personality Disorder, Antisocial Type. This refers to a non-psychotic disorder characterized by deeply ingrained maladaptive patterns of behavior, which patterns are lifelong. This particular category of Antisocial is reserved for individuals who are basically unsocialized and whose behavior pattern brings them repeatedly into conflict with society. They are grossly selfish, callous, irresponsible, impulsive, and unable to feel guilt or to learn from experience and punishment.

---

[4] Some of the allegations of ineffective assistance of counsel involve other matters than Baxter's mental condition. We agree with the habeas court that counsel were not ineffective for failing to try to introduce inadmissible polygraph evidence at the sentencing phase, for failing to object to the state's closing argument at the guilt phase of the trial, or for failing to inform Baxter that the attorney father of one of his two trial attorneys had represented the family of one of the state's witnesses.

> We feel that this patient has not manifested any evidence of a psychotic disorder and that he is mentally competent at present and able to advise with his counsel in the preparation of his defense. His examination has been completed, and we recommend that he be returned into the custody of the court for final disposition of his case.

On August 25, 1972, Baxter entered a plea of guilty and was given a probated sentence.

Before the trial in this case, the state furnished the defense with Baxter's "rap sheet." Baxter contends there was no reference to a Bulloch County conviction in the "rap sheet" furnished to him. His trial attorneys testified they were unaware of the Bulloch County conviction or the court's order finding him incompetent.

Baxter's attorneys talked to his mother and brothers, who told them Baxter is a "very dangerous person," and on at least one occasion had stolen money from his mother and broken her arm. They discovered Baxter had a long history of criminal behavior and incarceration, as a juvenile and as an adult. They retained the services of a minister to investigate and testify about Baxter's poor upbringing and family problems. They did not use family members as witnesses; because of their hostility to Baxter, his attorneys felt they would have done more harm than good.

His attorneys testified that although Baxter sometimes did not feel like talking to them, he did not behave "abnormally" or as if "psychotic." They did, however, request funds for an independent psychiatrist in the hopes of finding something they could use in mitigation. The court denied this request, but offered an evaluation by a medical expert employed by the state. They declined, thinking it was more likely the state would obtain evidence favorable to it, than that they would obtain evidence favorable to the defendant.

After he instituted the instant habeas proceeding, Baxter was evaluated by Dr. Michael Prewett, who has a Ph.D. degree in philosophy and clinical psychology, and is a licensed applied psychologist. Dr. Prewett's findings were presented by affidavits to the habeas court. See OCGA § 9-14-48 (a). In these affidavits, Dr. Prewett states that Baxter has had "numerous involuntary admissions to Central State Hospital" (presumably while a juvenile) and that the admission diagnoses typically have been "adjustment reaction of adolescence and unsocialized aggressive reaction." None of the hospital records he refers to are in the record of this case.

Dr. Prewett states that Baxter "acknowledges" a history of drug

and alcohol abuse, in and out of jail.[5] His IQ is in the low average range, with a significantly lower verbal IQ than performance IQ.

Dr. Prewett performed three portions of the Halstead-Reitan Neuropsychological Test Battery: (1) the Tactual Performance Test, (2) the Memory and Localization Test, and (3) the Category Test.

In the first test, Baxter was blindfolded and asked to "fit geometric shapes into a form board which he had never seen," first with one hand, then the other, and then with both. He was timed. In the second test, Baxter was asked to draw a picture of the form-board. Baxter could recall only 5 of the ten forms on the board, and placed none correctly. The third test was not explained in Dr. Prewett's affidavits; however, Dr. Prewett described it as "an excellent test of judgment and the ability to function in novel situations." Dr. Prewett stated that Baxter was mildly impaired in the first test, and seriously impaired in the other two.

Based on the foregoing, Dr. Prewett concluded that Baxter was not competent to stand trial "both before and during his trial for murder."

(b) Baxter argues from the foregoing that the state violated his rights under *Brady v. Maryland,* supra, when it failed to disclose the Bulloch County conviction and the order of the court finding him incompetent to stand trial. In addition, he argues that under *Ake v. Oklahoma,* 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985), he should have been provided an independent psychiatrist, and that, notwithstanding trial counsel's failure to file a special plea of incompetence to stand trial pursuant to OCGA § 17-7-130, the trial court should have conducted a hearing sua sponte to determine his competence to stand trial. Finally, Baxter contends his attorneys were ineffective for failing to investigate, discover, and present evidence of his impaired mental condition.

(c) As we noted on direct appeal, the prosecutor provided Baxter with "all the rap sheets I have in my file," and, further, offered to "make the GCIC computer available to him." We do not find that the prosecutor suppressed information in his possession that Baxter had been convicted in Bulloch County. More to the point, Baxter has failed to show the prosecutor knew of the Bulloch County order or the special plea. Baxter concedes this (appellant's brief at p. 30), but argues that knowledge of the order should be *imputed* to the prosecutor. We find no merit in that contention. See *Isaacs v. State,* 259 Ga. 717, 724 (11) (386 SE2d 316) (1989).

In any event, Baxter makes too much of the order ostensibly

---

[5] There is no other evidence in the record of Baxter's drug and alcohol abuse than his "acknowledge[ment]" to Dr. Prewett.

finding him incompetent. It is apparent that the order was based upon an in-chambers conference rather than a trial-type hearing, and that Baxter had not yet been evaluated. Although the record is insubstantial on this point (there is no transcript of the conference) it seems likely that the order was used simply as a means to secure an evaluation. The evaluation itself is of no help to Baxter. He was found to be competent to stand trial.

(d) Baxter's trial attorneys testified that while he was on a few occasions uncooperative, they had no difficulty communicating with him, he understood the nature and object of the proceedings against him, and he was capable of assisting them prepare his defense. The trial court had no reason to conduct an investigation of Baxter's competence *sua sponte* based upon the information available to the court. See, e.g., *Meders v. State*, 260 Ga. 49 (1) (389 SE2d 320) (1990). Moreover, there was nothing before the court that reasonably indicated Baxter's sanity would be an issue. Hence, the court's denial of funds for an independent psychiatrist was not error. Ibid.

(e) Baxter's trial attorneys prepared extensively for his trial. They did not, however, discover the Bulloch County proceedings, and perhaps Baxter's own omission to tell them about it was an oversight that might be excused in view of his lengthy criminal record. But even assuming his attorneys were deficient in failing to discover the Bulloch County order, Baxter must show that "the deficient performance prejudiced the defense" by showing a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

Baxter contends the discovery of the Bulloch County order would have led to further investigation of his mental condition and the fruits of this investigation could have been used to prove he was incompetent to stand trial, or failing that, could have been used in mitigation of sentence.

Plainly, however, the Bulloch County diagnosis that he was competent does not help him. Moreover, his more recent evaluation by Dr. Prewett was not persuasive to the habeas court, who, acting as factfinder, found "incredible" Dr. Prewett's conclusion that Baxter was incompetent "before and during his trial for murder." We do not find the habeas court's conclusion erroneous.[6]

The burden is on the criminal defendant to prove actual prejudice from an alleged attorney deficiency. Baxter has failed to do

---

[6] We note that Baxter does not contend he is incompetent *now* to maintain this habeas action, even though Dr. Prewett's conclusion of incompetence at trial was based primarily on Baxter's performance on tests administered during the pendency of these habeas proceedings.

so: We do not find a reasonable probability that his jury would have reached a different result if evidence had been presented at the sentencing phase of his trial that he was impaired in his ability to place geometric figures in a form-board while blindfolded, or to draw the form-board afterward. The evidence presented in this habeas proceeding does not establish prejudice, and therefore fails to demonstrate that Baxter received ineffective assistance of counsel. Compare *Hance v. Kemp*, 258 Ga. 649 (2) (373 SE2d 184) (1988).

9. An affidavit offered by the state in the proceedings below contributed too little to the state's case to amount to reversible error even if, as Baxter contends, it was not properly authenticated or timely (and it does not seem to be).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 24, 1990.

*Arnall, Golden & Gregory, Ellis G. Arnall, James W. Butler III, Joseph A. D'Amico, Patrick E. Bradshaw,* for appellant.

*Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.