## S98P1308. WHATLEY v. THE STATE.

(509 SE2d 45)

SEARS, Justice.

A jury convicted Frederick Ramone Whatley of malice murder, aggravated assault (two counts), armed robbery, motor vehicle hijacking, and possession of a firearm during the commission of a crime. The jury recommended death sentences for the murder and armed robbery after finding the following statutory aggravating circumstances: the offense of murder was committed while the defendant was engaged in the commission of an armed robbery, OCGA § 17-10-30 (b) (2); the offense of armed robbery was committed while the defendant was engaged in the commission of a murder, id.; and the offense of murder was committed by a person who has escaped from a place of lawful confinement, id. at (b) (9). The trial court sentenced Whatley to death for malice murder and, after recognizing that a death sentence cannot be imposed for armed robbery (*Jarrell v. State*, 234 Ga. 410, 424-425 (11) (216 SE2d 258) (1975) (death sentence for armed robbery is excessive and disproportionate)), to life imprisonment for armed robbery. Whatley received terms of years for his other convictions. He appeals, and we affirm.[1]

1. The evidence showed that Whatley entered Roy's Bait Shop in Griffin at about 8:45 p.m. on January 26, 1995. Whatley brandished a .32 caliber silver revolver and forced employee Tommy Bunn to lie face-down on the floor behind the counter. Whatley pressed the gun against Bunn's head and instructed the owner of the store, Ed Allen, to hand over the money in the cash register. Allen put money in a paper sack and placed the sack on the counter. Whatley moved to the front of the counter, retrieved the paper sack, and fired two shots. One shot struck Allen in the chest and pierced his left lung. Expert testimony established that this shot was fired from a distance of 18 inches. The second shot was fired at Bunn's head (Bunn was still lying prone behind the counter), but the bullet deflected off the

---

[1] The crimes were committed on January 26, 1995. On June 4, 1996, the grand jury indicted Whatley for malice murder, felony murder, aggravated assault (two counts), armed robbery, motor vehicle hijacking, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. The state filed a notice of intent to seek the death penalty on July 3, 1996. The state nolle prossed the charge of possession of a firearm by a convicted felon. Whatley's trial took place from January 6-16, 1997, and the jury acquitted him of felony murder and convicted him of all remaining counts. On January 16, 1997, the jury recommended death sentences for the murder and armed robbery, and the trial court sentenced Whatley to death for murder, life imprisonment for armed robbery, twenty years for each aggravated assault, twenty years for motor vehicle hijacking, and five years for possession of a firearm during the commission of a crime, all sentences to be served consecutively. Whatley filed a motion for new trial on February 3, 1997, amended on April 23, 1998, which the trial court denied on April 23, 1998. The case was docketed on May 11, 1998, and Whatley filed his notice of appeal the following day. Oral argument took place on July 20, 1998.

counter top and missed. Whatley then exited the store.

Outside the store, Whatley encountered Ray Coursey, who was getting out of his car near the store's doorway. Whatley held his gun to Coursey's head, forced him back into the driver's seat of the car, and told him, "take me . . . where I want to go." Whatley got in the back seat. Although mortally wounded, Allen obtained a hidden .44 caliber handgun, rushed to the front of the store, and fired several shots at Whatley, who returned fire. After the exchange of gunfire, Allen collapsed and died from internal bleeding caused by the previously-inflicted gunshot wound. Whatley exited Coursey's car, dropped the paper sack after it tore open, and fled on foot. Coursey observed that Whatley was limping.

Coursey and Bunn told the officers who arrived on the scene that the assailant had used a silver revolver. One of the officers had taken a report the previous day from Franklin White, who said that his silver revolver was missing and he suspected that his cousin, Whatley, had taken it. The officers went to the house where Whatley was staying with a relative, and found him during a consent search. Whatley had a bullet wound in his leg that was still bleeding. Franklin White's .32 caliber silver revolver, determined by a firearms expert to be the murder weapon, was found under Whatley's mattress. The police also found a bloody pair of thermal underwear with a bullet hole in the leg, a bloody towel, and bloody boxer shorts in a trash can behind the house. Fibers on a .44 caliber bullet removed from Coursey's car were consistent with fibers from the thermal underwear, and DNA taken from blood on the fibers matched Whatley. A palm print on the paper sack dropped next to Coursey's car also matched Whatley. In the penalty phase, the state introduced evidence that Whatley was an escapee from a Washington D.C. halfway house, where he had been serving time for robbery.

The evidence was sufficient to enable a rational trier of fact to find proof beyond a reasonable doubt of Whatley's guilt of malice murder, aggravated assault (two counts), armed robbery, motor vehicle hijacking, and possession of a firearm during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence was also sufficient to authorize the jury to find the statutory aggravating circumstances beyond a reasonable doubt. Id.; OCGA § 17-10-35 (c) (2).

2. Whatley claims that the trial court erred by failing to excuse for cause three prospective jurors due to bias. The record shows that Whatley did not move to strike two of these prospective jurors for cause, and the trial court did not err by failing to excuse them sua sponte. *Spencer v. State*, 260 Ga. 640, 641 (1) (a) (398 SE2d 179) (1990). The third prospective juror admitted that he had "a little" racial prejudice (Whatley is African-American). This juror also stated

that his prejudice would not prevent him from giving Whatley a fair trial, and that he could put aside Whatley's race in making his decisions in the case. " 'Before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.' " *Rower v. State*, 219 Ga. App. 865, 868 (1) (466 SE2d 897) (1995), quoting *Johnson v. State*, 262 Ga. 652, 653 (2) (424 SE2d 271) (1993). The juror's responses showed that he was able to decide the case based upon the evidence, regardless of his admitted racial prejudice. Therefore, the trial court did not abuse its discretion by refusing to strike this juror for cause. See *Rower*, supra at 866-869 (1).

3. Whatley claims that three prospective jurors should have been excused for cause because they favored a death sentence. Whatley did not object to the qualification of two of these prospective jurors, and the trial court did not err by failing to excuse them sua sponte. *Spencer*, 260 Ga. at 641 (1). The third prospective juror stated that her brother had been killed in a convenience store by a robber, and that she believed that the death penalty should be given for a "wilful killing." However, she also explained that the murderer of her brother had been given a life sentence, which was fair because the murder had taken place during a robbery so it had not been "wilful." She further stated that she would listen to the evidence and consider mitigation evidence. Viewing her responses as a whole and giving deference to the trial court's decision, we conclude that the trial court did not err by finding that this juror's views would not substantially impair her duties as a juror in accordance with her instructions and oath. *Wainwright v. Witt*, 469 U. S. 412, 424 (II) (105 SC 844, 83 LE2d 841) (1985); *Greene v. State*, 268 Ga. 47, 48-50 (485 SE2d 741) (1997).

4. A prospective juror stated that she would vote with the other jurors if her views were in the minority. Whatley objected that this juror was too willing to surrender her beliefs to the majority. The trial court stated that the juror may not have understood the question, and elicited from the juror that she would not surrender to a majority if she believed that Whatley was not guilty. The juror also stated that she would not surrender to a death-sentence majority if she believed that life without parole was the appropriate sentence. The trial court did not abuse its discretion in finding that this prospective juror was qualified. *McClain v. State*, 220 Ga. App. 474, 477 (6) (469 SE2d 756) (1996) (trial court's decision on a prospective juror's qualification not disturbed on appeal absent a manifest abuse of discretion).

5. Whatley complains that the state improperly asked prospective jurors on voir dire whether Whatley's relatively young age (28)

would prevent them from returning a death sentence. Whatley did not object to this question, so this argument is waived on appeal. *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992).

6. Whatley argues that the state used scientific evidence that was inherently unreliable. However, the record shows that all of the state's experts who testified were properly qualified as expert witnesses by the trial court, and Whatley had no objection to any witness' qualification. *Harper v. State*, 249 Ga. 519, 533 (10) (292 SE2d 389) (1982). Furthermore, "[o]nce a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty, or that it rests upon the laws of nature." *Harper*, supra at 526 (1). The hair comparison, fiber comparison, fingerprint comparison, and ballistics evidence introduced in this case is not novel, and has been widely accepted in Georgia courts. In addition, Whatley did not object that any of the scientific evidence was unreliable, or that any testing procedure was improper. These issues are therefore waived on appeal. *Harper*, supra at 533 (10). The trial court did not make the DNA findings required by *Caldwell v. State*, 260 Ga. 278, 286-287 (1) (b) (393 SE2d 436) (1990), but Whatley did not object to the admission of the DNA evidence at trial and therefore cannot raise this error on appeal. *Smith v. State*, 265 Ga. 570, 571-572 (3) (459 SE2d 420) (1995).

7. Whatley complains that a photograph of the murder weapon was erroneously admitted into evidence. However, the actual murder weapon was admitted into evidence without objection, and the introduction of evidence that is cumulative of other evidence presented at trial does not constitute reversible error. See *Beene v. State*, 202 Ga. App. 857, 858 (2) (415 SE2d 545) (1992); *Moon v. State*, 199 Ga. App. 94, 97 (2) (404 SE2d 273) (1991).

8. The trial court did not err by allowing the state to introduce a photograph of the victim in life through the testimony of Tommy Bunn. "The general rule is that it is not error to admit a photograph of the victim while in life." *Ledford v. State*, 264 Ga. 60, 66 (14) (439 SE2d 917) (1994). Further, a family member did not make the identification since Bunn is not related to the victim. See id.

9. Whatley complains that the state's closing argument in the guilt-innocence phase was improper. Whatley, however, did not object to any portion of the state's closing argument. "When no timely objection is interposed, the test for reversible error is not simply whether or not the argument is objectionable, or even if it might have contributed to the verdict; the test is whether the improper argument in reasonable probability changed the result of the trial." *Todd v. State*, 261 Ga. 766, 767 (2) (a) (410 SE2d 725) (1991). We find no error sufficient to overcome Whatley's procedural default.

10. Whatley claims that the trial court's charge in the guilt-innocence phase contained many errors.

(a) The trial court charged the jury that Whatley was innocent until proven guilty. Whatley asserts that the trial court should have said "unless" instead of "until." This contention is without merit. *Nash v. State*, 225 Ga. App. 10, 11 (3) (482 SE2d 520) (1997); *Mitchell v. State*, 223 Ga. App. 319 (1) (477 SE2d 612) (1996).

(b) The trial court instructed the jury that if there is a conflict in the evidence, or a conflict between witnesses, "it is your duty to settle that conflict if you can without believing that any witness made a false statement or committed perjury. If you cannot do this, then it becomes your duty to believe that witness or those witnesses you think best entitled to belief." Whatley complains that this instruction told the jurors to presume that state witnesses were telling the truth. Although this Court has recommended that such a presumption-of-truthfulness charge not be used (*Noggle v. State*, 256 Ga. 383, 385-386 (4) (349 SE2d 175) (1986)), we have also held that the use of such a charge is not unconstitutional and does not constitute reversible error. *Noggle*, supra at 386; *Baxter v. Kemp*, 260 Ga. 184, 186 (5) (391 SE2d 754) (1990); see also *Mitchell*, 223 Ga. App. at 319 (2).

(c) Viewed as a whole, the trial court's charge on reasonable doubt was proper.

(d) Whatley complains about the trial court's charge on circumstantial evidence. The trial court, however, gave the exact charge on circumstantial evidence requested by Whatley. Even if the charge was incorrect, such invited error is not grounds for reversal. *Barnes v. State*, 269 Ga. 345, 356 (19) (496 SE2d 674) (1998).

(e) Whatley did not request several charges that he claims the trial court should have given to the jury. Absent a request, the failure to give these charges is not error. See, e.g., *Mauldin v. State*, 167 Ga. App. 789, 790-791 (4) (307 SE2d 689) (1983) (in the absence of a timely request, it is not error to fail to charge the jury that the defendant's failure to testify creates no presumption against him).

11. Whatley complains that the trial court erred by allowing the state in the sentencing phase to introduce evidence of two incidents as non-statutory aggravating circumstances, without pretrial notice. The first incident involved Whatley asking the police to return to him the money that he had stolen during the armed robbery. The second incident involved Whatley telling a jailer that he hoped that the transfer process from jail to prison did not take long because he was worried about missing the Super Bowl. All aspects of a defendant's crime, character, and attitude, including evidence of his lack of remorse, is admissible in the sentencing phase. See *McMichen v. State*, 265 Ga. 598, 607 (12) (458 SE2d 833) (1995). Further, although Whatley did not receive notice of these incidents until trial, the

record shows that Whatley did not object to this evidence or to a lack of notice so this argument is waived on appeal. *Earnest*, 262 Ga. at 495 (1). The trial court is also not required to instruct the jury on a burden of proof for non-statutory aggravating circumstances. *McClain v. State*, 267 Ga. 378, 387 (8) (477 SE2d 814) (1996).

12. The trial court did not err by sustaining a state hearsay objection in the sentencing phase to the testimony of Whatley's cousin, Lorraine Goodman. Ms. Goodman began to testify on direct examination about what Whatley had told her concerning his relationship with his mother when he lived in Washington D.C. The state objected that this was hearsay, and the trial court sustained the objection. We find no error. The hearsay rule is not suspended in the sentencing phase, and Whatley made no proffer to enable us to determine if this potential mitigation testimony outweighed the harm from a violation of the hearsay rule. *Davis v. State*, 263 Ga. 5, 9 (14) (426 SE2d 844) (1993); *Cobb v. State*, 244 Ga. 344, 359 (28) (260 SE2d 60) (1979). In addition, the trial court's ruling was not harmful because Whatley testified extensively about his relationship with his mother.

13. It is asserted that the prosecutor engaged in improper cross-examination of Whatley in the sentencing phase by repeatedly asking him if other witnesses had lied. See *Cargill v. State*, 255 Ga. 616, 631 (17) (a) (340 SE2d 891) (1986) (improper for counsel to ask a witness if another witness is lying). Whatley testified on direct examination that many of the state's witnesses had said things that were not true, and he recited a version of events that contradicted those witnesses on several points. For example, Whatley testified, contrary to Bunn's testimony, that he only fired once inside the store, in response to Ed Allen reaching for his gun, and that Allen was not shot until he was standing in the store's doorway (from a distance of 20 feet, not 18 inches). On cross-examination, he also denied putting his gun to Bunn's or Coursey's head. We find no error. The state's questions about whether other witnesses were lying " 'merely emphasized the conflict in the evidence, which it was the jury's duty to resolve, and the trial court properly charged the jurors [regarding the determination of witness credibility].' " *Tucker v. State*, 228 Ga. App. 321, 324 (2) (491 SE2d 420) (1997), quoting *Little v. State*, 194 Ga. App. 361, 362 (2) (390 SE2d 445) (1990); see also *Dorsey v. State*, 259 Ga. 809 (3) (387 SE2d 889) (1990) (the state may challenge the defendant's truthfulness on cross-examination by asking defendant if other witnesses are lying). Further, Whatley did not object to any of the state's questions, and errors not raised at trial will not be heard on appeal. *Earnest v. State*, 262 Ga. at 495 (1); *Cargill*, supra. Whatley also did not object to cross-examination questions about his lack of remorse. *Earnest*, supra.

14. Whatley complains that the jury was permitted to see him in shackles.[2] See *Elledge v. Dugger*, 823 F2d 1439, 1450-1451 (11th Cir. 1987) (sight of shackled defendant in sentencing phase prejudicial to defendant), modified 833 F2d 250. The record shows that Whatley wore leg shackles during the trial, but these shackles were not visible to the jury when he was seated at the defense table. The trial court ensured that the jury was not present when Whatley was moved in or out of the courtroom. However, in the penalty phase, Whatley was called to testify. The record shows that it was the prosecutor, in a bench conference, who voiced concerns over the jury seeing the defendant walk to the stand wearing leg shackles. The defense counsel replied to the prosecutor's comment, "[w]ell, he's convicted now," and the trial court permitted Whatley to take the stand with the jury present. " 'A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later.' [Cit.]" *Dennard v. State*, 263 Ga. 453, 456 (6) (435 SE2d 26) (1993). This contention is without merit.

15. Whatley claims that the state's closing argument in the penalty phase was improper. Whatley did not object to any portion of the state's argument so he can only prevail if the state's improper argument in reasonable probability changed the sentencing verdict. *Hicks v. State*, 256 Ga. 715, 730 (23) (352 SE2d 762) (1987).

(a) Whatley asserts that the state made several statements about the commission of the crimes that are unsupported by the facts in the record. The record reveals that these statements were proper inferences. See *Morgan v. State*, 267 Ga. 203 (1) (476 SE2d 747) (1996) (counsel on closing argument may draw from the evidence any reasonable and legitimate inference).

(b) Whatley complains that the prosecutor improperly compared him, without any evidence to support the comparison, to other murderers who had an easy time in prison. For example, the prosecutor argued:

> Remember Richard Speck, the man who around 1968 killed six nurses in Chicago? That man — some of you may have seen it. They had him on video. He made a video while he was in jail, it was undercover. They found it after he died of natural causes, cause he didn't get the death penalty. They thought he deserved another chance. And on that film . . . he said, if people knew how much fun I was having, they would turn me loose.

---

[2] Whatley does not complain that he was placed in shackles, only that the jury was permitted to see him that way.

"Analogizing a defendant or a defendant's case to [a] well-known defendant or case is permissible during argument if the analogy is supported by facts in evidence." *Carr v. State*, 267 Ga. 547, 555 (7) (a) (480 SE2d 583) (1997). In this case, there was no evidentiary basis for this analogy because no evidence was introduced about whether Whatley enjoyed prison. Compare *Mize v. State*, 269 Ga. 646, 653-654 (8) (501 SE2d 219) (1998) (Charles Manson analogy appropriate to argument that Mize was criminally responsible for murder based on his instructions to kill and his control over the shooter). There was also no evidence introduced about the obscure fact that Richard Speck enjoyed prison, or to support the state's other analogies. Therefore, the state's injection of extraneous, prejudicial information into its argument was improper. See *Bell v. State*, 263 Ga. 776, 777-778 (439 SE2d 480) (1994). We find, however, that these analogies were not so prejudicial as to overcome Whatley's procedural default. *Hicks*, supra.

(c) Because Whatley had been convicted of a malice murder committed while he was an escapee from a detention facility, it was a reasonable inference, and therefore a proper argument, that Whatley could harm or kill a prison guard during an escape attempt. See *Pye v. State*, 269 Ga. 779, 788 (19) (505 SE2d 4) (1998).

(d) Whatley cannot show sufficient prejudice to overcome his procedural default with regard to other arguments he asserts were improper. *Hicks*, supra.

16. After closing arguments in the penalty phase but before the trial court's charge, the jury foreman asked the trial court, "Could [life without parole] get commuted at a later date, parole, discharge due to crowded conditions, etcetera?" The trial court conferred with counsel for both parties. Defense counsel told the trial court that the court's charge answers the question. The trial court agreed and instructed the jury, "I cannot specifically answer that question because I don't know and nobody else knows what is going to occur in the future. Let me invite your attention to my charge of law." Whatley did not object to this response, but he now complains that the trial court failed to properly answer the jury's question about parole eligibility. It is well settled that a party cannot ignore an error at trial, take his chance on a favorable verdict, and later complain about the error on appeal. *Dennard*, 263 Ga. at 456 (6). A party also cannot complain about an alleged injustice that it invited. See *Barnes*, 269 Ga. at 356 (19). We find no error.

17. One of the statutory aggravating circumstances found by the jury is invalid. The state sought the death penalty for armed robbery and the jury found that "[t]he offense of . . . armed robbery . . . was committed while the [defendant] was engaged in the commission of another capital felony," to-wit: murder. OCGA § 17-10-30 (b) (2). A

death sentence cannot be imposed for armed robbery so this statutory aggravating circumstance must be vacated. See *Jarrell*, 234 Ga. at 424-425 (11). However, reversal of the death sentence is not required because the death sentence is based on other valid statutory aggravating circumstances. *Jenkins v. State*, 269 Ga. 282, 294 (23) (a) (498 SE2d 502) (1998); *Wilson v. State*, 250 Ga. 630, 638 (9) (300 SE2d 640) (1983).

18. The death sentence in this case was not imposed under the influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1). The death sentence is also not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The cases listed in the Appendix support the imposition of the death penalty in this case as they involve a deliberate murder during the commission of an armed robbery, or a murder committed by an escapee.

*Judgment affirmed. All the Justices concur, except Hunstein, Carley and Thompson, JJ., who concur specially as to Division 9.*

THOMPSON, Justice, concurring specially.

I fully concur with all that is said by the majority, except for its reasoning in Division 9.

Because Whatley failed to object to any portion of the State's closing argument in the guilt-innocence phase, I conclude that he has waived his right to assert error on appeal as to that phase of the trial. See *Miller v. State*, 267 Ga. 92 (2) (475 SE2d 610) (1996) (failure to timely object to improper closing argument precludes review of the argument on appeal). But, with regard to possible error in the state's closing argument that may affect the death sentence, a different standard applies: when no timely objection is interposed, the test for reversible error is if " 'there was a reasonable probability that the improper arguments changed the jury's exercise of discretion in choosing between life imprisonment or death.' " *Hicks v. State*, 256 Ga. 715, 730 (23) (352 SE2d 762) (1987), quoting *Ford v. State*, 255 Ga. 81, 94 (8) (I) (2) (335 SE2d 567) (1985). The "reasonable probability" standard is used by this Court to evaluate improper closing argument that was not objected to at trial because we have a duty under OCGA § 17-10-35 (c) (1) to ensure that a sentence of death is not imposed under the influence of passion, prejudice, or any other arbitrary factor. See *Hicks*, supra; *Spivey v. State*, 253 Ga. 187, 191 (4) (319 SE2d 420) (1984). Therefore, I find that the "reasonable probability" standard only applies to the effect an uncontested improper argument may have had on a resulting death sentence. See id. Thus, I must conclude that our previous death penalty cases which used the incorrect standard in the guilt-innocence phase were decided incorrectly to the extent that they utilized the "reasonable

probability" standard, instead of waiver, to evaluate uncontested closing argument as it affects a defendant's convictions. See, e.g., *Mize v. State*, 269 Ga. 646, 653 (8) (501 SE2d 219) (1998); *Barnes v. State*, 269 Ga. 345, 356 (23) (496 SE2d 674) (1998); *Sears v. State*, 268 Ga. 759, 765 (15) (493 SE2d 180) (1997); *Bishop v. State*, 268 Ga. 286, 294 (14) (486 SE2d 887) (1997); *Carr v. State*, 267 Ga. 547, 555 (7) (480 SE2d 583) (1997); *Bright v. State*, 265 Ga. 265, 285 (19) (455 SE2d 37) (1995); *Hittson v. State*, 264 Ga. 682, 689 (13) (449 SE2d 586) (1994); *Todd v. State*, 261 Ga. 766, 767 (2) (a) (410 SE2d 725) (1991).

Applying the "reasonable probability" standard in this case to the effect that the state's guilt-innocence phase closing argument may have had on Whatley's death sentence, I would find no error sufficient to overcome Whatley's procedural default.

I am authorized to state that Justice Hunstein and Justice Carley join in this special concurrence.

APPENDIX.

*Bishop v. State*, 268 Ga. 286 (486 SE2d 887) (1997); *Jones v. State*, 267 Ga. 592 (481 SE2d 821) (1997); *Carr v. State*, 267 Ga. 547 (480 SE2d 583) (1997); *McClain v. State*, 267 Ga. 378 (477 SE2d 814) (1996); *Crowe v. State*, 265 Ga. 582 (458 SE2d 799) (1995); *Mobley v. State*, 265 Ga. 292 (455 SE2d 61) (1995); *Christenson v. State*, 262 Ga. 638 (423 SE2d 252) (1992); *Meders v. State*, 261 Ga. 806 (411 SE2d 491) (1992); *Ferrell v. State*, 261 Ga. 115 (401 SE2d 741) (1991); *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991); *Isaacs v. State*, 259 Ga. 717 (386 SE2d 316) (1989); *Romine v. State*, 256 Ga. 521 (350 SE2d 446) (1986); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Ingram v. State*, 253 Ga. 622 (323 SE2d 801) (1984).

DECIDED DECEMBER 4, 1998.

*Johnny B. Mostiler,* for appellant.
*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney, Thurbert E. Baker, Attorney General, Christopher L. Phillips, Assistant Attorney General, Shepherd & Johnson, Richard A. Vandever,* for appellee.