# SUPREME COURT OF THE UNITED STATES

## FREDERICK R. WHATLEY *v.* WARDEN, GEORGIA DIAGNOSTIC AND CLASSIFICATION PRISON

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 20–363.   Decided April 19, 2021

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, dissenting from denial of certiorari.

A jury sentenced petitioner Frederick R. Whatley to death the morning after watching him reenact a murder while wearing unnecessary leg irons and manacles. When the State called Whatley to the stand during the sentencing proceeding, his attorney waved away the prosecutor's concerns about the visible shackles, then sat silent when the prosecutor handed Whatley a fake gun and asked him to reenact the murder for which he had just been convicted. Defense counsel's unreasonable failure to object to Whatley's shackling was plainly prejudicial under this Court's precedent. I would grant the petition, summarily reverse, and remand for a new sentencing proceeding.

I

Following Whatley's conviction for robbing and killing the owner of a Georgia bait shop and liquor store, the State asked the jury to impose a sentence of death. The sentencing proceeding involved just one day of evidence. The State relied on two, conceded statutory aggravating circumstances: Whatley committed the murder (1) during an armed robbery, Ga. Code Ann. §17–10–30(b)(2) (Supp. 2019), and (2) after having "escaped from [a] place of lawful confinement," §17–10–30(b)(9), because he had walked away from a halfway house to which he had been paroled a few months earlier. The State further showed that Whatley had prior convictions for forging a check, threatening a man

with a shotgun and taking his wallet, and simple assault. Finally, the State elicited testimony from a sheriff's deputy that Whatley once wondered aloud whether he would miss the Super Bowl while in custody. Electronic Case Filing in *Whatley* v. *Upton*, No. 3:09–cv–00074, Doc. 7–9, (ND Ga., July 28, 2009) pp. 15, 22 (ECF). This, the State argued, proved Whatley felt no remorse for his crimes. ECF Doc. 7–11*,* at 31.

Defense counsel called a number of Whatley's friends and family, followed by Whatley himself. Whatley had worn shackles throughout the guilt phase, but the court took care to ensure the jury did not see the restraints. See, *e.g.*, ECF Doc. 7–5, at 110, 135–138. When defense counsel called Whatley to testify at sentencing, the prosecutor sensibly asked if the court needed to "take the jury out before he takes the stand" in light of the "chains" and "shackles on him." Defense counsel waved off the prosecutor's concern. "Well, he's convicted now," he shrugged, referencing the jury's earlier guilty verdict. The trial court echoed that conclusion: "He's been convicted." ECF Doc. 7–9, at 106. The court never found that the restraints were even necessary, much less that there was no way to hide them from the jury.

Whatley hobbled to the witness stand. His leg irons and cuffs were in plain view. He testified for several hours in those restraints. Among other things, Whatley contested the State's version of the shooting for which he had been convicted. The State claimed that Whatley tried to execute the witnesses to his crime after the storeowner gave him the money, shooting the owner in the chest and nearly shooting an employee but hitting the counter instead. The storeowner, mortally wounded, pulled his own gun. Whatley ran, and the two exchanged shots in the parking lot before the owner died. Whatley, however, testified that the storeowner pulled a gun immediately after giving him the money, and Whatley reflexively fired a single shot that hit the counter before running away. The owner gave chase,

and Whatley killed him during the shootout outside.

On cross-examination, the prosecutor asked Whatley to "step down" from the witness box to demonstrate his version of events. The prosecutor handed Whatley a "toy pistol," noting, "Now, this is not the type of gun you had that day. I hope you'll understand why I don't want to give you a real gun." ECF Doc. 7–10, at 13. He told Whatley to "show this jury how you held a gun on [the victim] and told him to give you that money. Now, you go ahead and show them. You pretend I'm [the victim]. You pull the gun on me and show them how you did it." *Id.,* at 14. With no objection from his attorney, Whatley reenacted the armed robbery and shooting, shuffling around the courtroom with shackles on his legs and waving the gun around with cuffs on his wrists. The prosecutor maintained a running commentary. See *ibid.* ("Show me how you pointed it at him"); *id.,* at 15 ("I want you to point the gun at me just like you did him that day"). He ended his cross-examination shortly thereafter. *Id.,* at 19. Defense counsel never objected.

The next morning, the prosecutor argued in closing that the jury should sentence Whatley to death primarily because he posed a severe threat of future violence. See, *e.g.,* ECF Doc. 7–11, at 20 ("[I]f you think that a guard gets between him and life and he won't kill a guard, you'd better think again"). The court gave no curative instruction about Whatley's shackling. The jury deliberated for 90 minutes before recommending the death penalty.

On direct appeal, the Georgia Supreme Court found that Whatley forfeited his claim that his visible shackling violated his due process rights because his lawyer affirmatively waived any objection despite the prosecutor's stated concerns. *Whatley* v. *State*, 270 Ga. 296, 302, 509 S. E. 2d 45, 52 (1998).

Whatley then filed a state habeas petition, arguing that his trial attorney's failure to object to his unnecessary shackling constituted ineffective assistance of counsel. The

Georgia Supreme Court rejected the petition. *Whatley* v.
*Terry*, 284 Ga. 555, 571–572, 668 S. E. 2d 651, 663 (2008).
While acknowledging that unnecessary shackling is pre-
sumptively prejudicial when an objection is properly pre-
served, the court held that defendants retain their burden
to show prejudice when they claim trial counsel was inef-
fective for failing to object. *Ibid.* The court summarily con-
cluded that Whatley had not made that showing. *Ibid.*

Whatley filed a federal habeas petition, arguing that the
state court's denial of his ineffective-assistance claim was
contrary to and an unreasonable application of clearly es-
tablished federal law. The Eleventh Circuit disagreed. 927
F. 3d 1150, 1184–1187 (2019). The court explained at
length why Whatley was not entitled to a presumption of
prejudice, and then determined in one short paragraph that
Whatley's "violent criminal history" and failure to "turn
things around," together with the crimes at issue, rendered
the shackling "trivial." *Id.,* at 1187.

Judge Jordan dissented. In his view, the state court's rul-
ing might have been reasonable "had the shackles merely
been visible to the jury when Mr. Whatley walked to the
witness box. Or if the trial court had given a curative in-
struction to the jury about the restraints. Or if Mr. Whatley
was not forced to re-enact the murder in front of the jury
while the prosecutor played the role of the victim. Or if the
prosecutor had not explicitly made Mr. Whatley's future
dangerousness a key theme in favor of his request for
death." *Id.,* at 1193. But with these facts taken together,
prejudice was "undeniable." *Ibid.*

## II

To succeed on an ineffective-assistance-of-counsel claim,
Whatley must show that his counsel's deficient perfor-
mance prejudiced him. *Strickland* v. *Washington*, 466 U. S.
668, 688, 694 (1984). Prejudice means a "reasonable prob-

ability that, but for counsel's unprofessional errors, the re-
sult of the proceeding would have been different." *Id.,* at
694. Because Georgia requires unanimity to impose a cap-
ital sentence, Whatley need only show a reasonable proba-
bility that one juror would have voted against the death
penalty absent his counsel's deficiency.[1] See *Wiggins* v.
*Smith*, 539 U. S. 510, 537 (2003). However, relief is only
available under the Antiterrorism and Effective Death Pen-
alty Act of 1996 (AEDPA) if the state court's conclusion that
any deficiency was not prejudicial "was contrary to, or in-
volved an unreasonable application of, clearly established
Federal law." 28 U. S. C. §2254(d)(1). Under this standard,
federal courts do not defer to a "state-court decision that
correctly identifies the governing legal rule but applies it
unreasonably to the facts of a particular prisoner's case."
*Williams* v. *Taylor*, 529 U. S. 362, 407–408 (2000).

### III
### A

This Court long ago recognized that "no person should be

------

[1] Georgia argued in state court that "counsel should not be regarded as
having performed deficiently by failing to object to the shackling, because
the practice had not yet been established as unconstitutional." *Whatley*
v. *Terry*, 284 Ga. 555, 571, 668 S. E. 2d 651, 663 (2008). The Georgia
Supreme Court all but rejected that argument, as it "had already
strongly suggested in dictum that it was unconstitutional to place visible
shackles on a death penalty defendant during the sentencing phase with-
out a showing of particular need." *Ibid.*, and n. 38 (citing *Moon* v. *State*,
258 Ga. 748, 755, 375 S. E. 2d 442, 449 (1988)). Given its conclusion on
prejudice, however, the court simply assumed deficiency. 284 Ga., at
571, 668 S. E. 2d, at 663. The State wisely does not raise this issue here.
In addition to state-court decisions, this Court had several times empha-
sized the prejudicial nature of shackling, well before the trial in this case.
See *Illinois* v. *Allen*, 397 U. S. 337, 344 (1970); *Holbrook* v. *Flynn*, 475
U. S. 560, 568–569 (1986). Indeed, the prosecutor himself suggested that
the court excuse the jury so Whatley could take the stand outside their
presence, thus hiding his chains. ECF Doc. 7–9, at 106. Certainly, a
reasonable defense attorney would not have taken it upon himself to
overrule the prosecutor's objection to the defendant's unfair treatment.

tried while shackled . . . except as a last resort," in part because "the sight of shackles . . . might have a significant effect on the jury's feelings about the defendant." *Illinois* v. *Allen*, 397 U. S. 337, 344 (1970). "Shackling" is "the sort of inherently prejudicial practice that . . . should be permitted only where justified by an essential state interest specific to each trial." *Holbrook* v. *Flynn*, 475 U. S. 560, 568–569 (1986).

In 2005, this Court held that needless, visible shackling at sentencing likewise violates a capital defendant's right to due process under the Fifth and Fourteenth Amendments. *Deck* v. *Missouri*, 544 U. S. 622, 633 (2005). In that case, Carman Deck was visibly "shackled with leg irons, handcuffs, and a belly chain" during his capital sentencing, over his attorney's objection and with no finding of specific need. *Id.,* at 625. This Court explained in no uncertain terms that shackling is highly likely to be prejudicial at a capital sentencing:

> "The Court has stressed the acute need for reliable decisionmaking when the death penalty is at issue. The appearance of the offender during the penalty phase in shackles, however, almost inevitably implies to a jury, as a matter of common sense, that court authorities consider the offender a danger to the community—often a statutory aggravator and nearly always a relevant factor in jury decisionmaking, even where the State does not specifically argue the point. It also almost inevitably affects adversely the jury's perception of the character of the defendant. And it thereby inevitably undermines the jury's ability to weigh accurately all relevant considerations—considerations that are often unquantifiable and elusive—when it determines whether a defendant deserves death." *Id.,* at 632–633 (citations and internal quotation marks omitted).

Because these prejudicial effects "'cannot be shown from

a trial transcript,'" the Court in *Deck* further held that "where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation." *Id.,* at 635. The burden instead rests on the State to prove the shackling harmless. *Ibid.*

### B

To be sure, *Deck* does not require reviewing courts to presume prejudice when the defendant fails to object to his shackling at trial. This Court has not decided to what extent such a presumption applies on collateral review, in the context of an ineffective assistance of counsel claim. Cf. *Weaver* v. *Massachusetts*, 582 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 13). Both the Georgia Supreme Court and Eleventh Circuit held that the *Deck* presumption does not apply to ineffective-assistance-of-counsel claims. 284 Ga., at 571–572, 668 S. E. 2d, at 663; 927 F. 3d, at 1184–1187. That was not a clearly erroneous application of federal law.

What was clearly unreasonable, however, was to ignore entirely the ways in which visible shackling is likely to distort the outcome of a capital sentencing proceeding. As *Deck* explains, reasonable jurors confronted with a defendant in chains will assume court officials have determined those chains were necessary to prevent the defendant from trying to escape or attack the lawyers, the judge, or even the jurors. Chains paint a defendant as an immediate threat. Jurors faced with a defendant in shackles will find it more difficult to consider the defendant as a whole person and to weigh mitigating evidence impartially. If jurors think the court does not trust a capital defendant to avoid violence at his own sentencing proceeding, with his life on the line, they are unlikely to trust him to do so while serving a life sentence with no hope of parole. "In these ways, the use of shackles can be a thumb on death's side of the scale."

*Deck*, 544 U. S., at 633 (alteration and internal quotation marks omitted).

Absent a presumption, this may not matter in some cases. Other facts may overwhelmingly suggest a defendant's future dangerousness, or the circumstances surrounding the shackling may indicate it likely did not matter. Reasonable jurists faithfully applying *Strickland* in light of the observations in *Deck* might then disagree about whether counsel's failure to object may have caused prejudice. Under AEDPA, federal courts should defer to state-court decisions finding no prejudice in such cases.

That is not what happened here. For the grand finale of his cross-examination, the prosecutor handed Whatley a fake gun and had him reenact the murder, with the prosecutor playing the victim. Whatley's chains clanked and rattled with every move, constantly reminding the jury that the court apparently believed he might do more than just pretend to kill someone in the courtroom if left unrestrained. Leaving nothing to implication, the prosecutor remarked, "I hope you'll understand why I don't want to give you a real gun." ECF Doc. 7–10, at 13.

The prosecutor hammered this point home at length in closing. "Frederick Whatley," he told the jury, "is going to kill somebody else unless you execute him." ECF Doc. 7–11, at 17. Prison was "only going to make him smarter and meaner." *Id.,* at 27. "[D]o you think he won't kill a guard if that guard stands between him and freedom? He will be a threat until the day he is executed." *Ibid.* "This man should be given the death penalty because he is dangerous, he has had a history of violence, he's never going to get any better than what you've seen right now." *Id.,* at 28.

Whatley's chains, fresh in the jury's mind from the previous afternoon's spectacle, powerfully corroborated the prosecutor's argument. It is hard to imagine a more prejudicial example of needless shackling.

On the other hand, Whatley's criminal history was relatively minor and largely from his teenage years. The statutory aggravators in his case were less serious than in many other capital cases.[2] The State's only evidence of lack of remorse was that Whatley likes football. The evidence at the sentencing proceeding also showed that Whatley's mother abandoned him, he never knew his father, and he was experiencing homelessness when he committed this crime. Whatley's friends and family testified to his redeeming qualities and begged the jury to show mercy. If Whatley had testified free of chains, it is reasonably probable that at least one juror would have done so.

On these facts, defense counsel's failure to object to Whatley's unnecessary shackling renders his death sentence not only unreliable, but unconstitutional. The only way to conclude otherwise is to disregard this Court's clear precedent about the likely effect of visible, unnecessary shackling. Because I would not allow the State to put Frederick Whatley to death based on such a constitutionally flawed sentencing proceeding, I respectfully dissent.

---

[2] See, *e.g.,* Ga. Code Ann. §17–10–30(b)(7) (authorizing the death penalty for those who commit murders that involve "torture, depravity of mind, or an aggravated battery"); §17–10–30(b)(11) (authorizing the death penalty for those who commit murder and have prior convictions for "rape, aggravated sodomy, aggravated child molestation, or aggravated sexual battery").