STATE OF WISCONSIN, Plaintiff-Respondent,

v.

Victor K. JOHNSON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 02–2793–CR. Oral argument March 10, 2004.—Decided July 1, 2004.*

2004 WI 94

(Also reported in 681 N.W.2d 901.)

628

BRADLEY, J., concurs.
ABRAHAMSON, C.J., joins.
SYKES, J., took no part.

For the defendant-appellant-petitioner there were briefs by *James R. Lucius,* Greenfield, and oral argument by *James R. Lucius.*

For the plaintiff-respondent the cause was argued *Daniel J. O'Brien,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. PATIENCE D. ROGGENSACK, J. Victor K.

Johnson petitions for review of an unpublished court of appeals decision that affirmed judgments and an order of the circuit court for Milwaukee County, Jeffrey A. Conen, presiding, convicting Johnson of one count of armed robbery, one count of robbery with threat of force, one count of attempted armed robbery, and three counts of felony bail jumping, and denying Johnson's postconviction motion alleging ineffective assistance of counsel.[1] Johnson claims that the circuit court erroneously exercised its discretion in permitting the State to question him about the truthfulness of another witness, contrary to *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984). He also contends that his trial counsel was ineffective for failing to object to the questions.

¶ 2. We conclude that the purpose and effect of the prosecutor's cross-examination of Johnson was to impeach Johnson's credibility, not to bolster the credibility of another witness, because both Johnson and the other witness were testifying to their personal observations about the same events. Therefore, the cross-examination of Johnson was permissible. Because we have concluded that the cross-examination was not improper, we also conclude that trial counsel's perfor-

---

[1] We note that in his petition for review, as he did below, Johnson points out that the judgment of conviction in case number 01–CF-005883 is inaccurate. The judgment indicates he was convicted of armed robbery, when the jury returned a verdict of guilty as to attempted armed robbery. We note that Johnson is correct, but also that the judgment of conviction in case number 01–CF-003728 indicates he was convicted of attempted armed robbery when in fact the jury returned a verdict of guilty as to armed robbery. Johnson requests no relief for these scrivener's errors; accordingly, we do not address them further.

mance was not deficient for failing to object to it. And finally, we conclude that because Johnson did not object to his cross-examination, the issue of whether the circuit court erroneously exercised its discretion in permitting the questioning has not been preserved for appeal; however, we have reviewed the admission of this testimony in our review of Johnson's ineffective assistance of counsel claim. Accordingly, we affirm the order denying Johnson postconviction relief and affirm the judgments of conviction.

## I. BACKGROUND

¶ 3. On three separate occasions in 2000, Johnson entered a retail establishment, took some items, and left without paying for them. Johnson took several packages of batteries from Kohl's; a number of videotapes from Blockbuster Video; and power tools from Home Depot. In each instance, when store personnel followed Johnson out of the store to confront him about taking merchandise, Johnson threatened them with a knife. The State charged Johnson with one count of armed robbery and one count of felony bail jumping in each of the three cases.

¶ 4. At trial, Evelyn Zahn testified for the State. Zahn was working at Blockbuster Video the day that Johnson stole the videotapes. She testified that she saw Johnson enter the store with an empty canvas bag and go to a table near the front of the store on which previously viewed videotapes were stacked for sale. Zahn said she saw Johnson ripping the cardboard boxes that the tapes were in, and once saw him put a video into his canvas bag. She testified that she found the pieces of nine or ten cardboard slip sleeves strewn about the store. Those pieces contained the bar codes for the videos Johnson took. Zahn said that she noticed when

Johnson began walking out of the store his canvas bag was now full, and that she asked him what was in it. She testified that he ignored her, and as he left the store he set off the security devices. Zahn said she followed Johnson outside and demanded the return of the tapes. According to Zahn, Johnson put the bag in a car on the passenger side, then walked around the back of the car to the driver's side, stopping to slightly open the trunk. When he reached the driver's side of the car, where she was standing, he was holding a knife that he brandished at her.

¶ 5. When Johnson testified on direct examination about the Blockbuster Video robbery, he acknowledged that he put a number of videos from the resale table into his canvas bag and that he set off the security device when he walked through it. Johnson said that he cut off the bar codes, which he seemed to think were security tags, using a serrated knife. He also testified that he left pieces of the cardboard slip sleeves around the store. On cross-examination the next day, Johnson contradicted his direct testimony, and said that he did *not* take videotapes from the resale table because those videotapes did not have any street value, and he was stealing videos to re-sell them on the street. The following exchange occurred between the prosecutor and Johnson:

> Q And do you agree with Ms. Zahn that there was a table where they have the resale videos that is up near the front where the checkout area is?
>
> A No, ma'am, I do not agree with that.
>
> Q What area did you say you were in?
>
> A I was on [sic] the shelves on the right side of the store.

Q Did you go over to that table?

A I don't remember, ma'am.

Q So what you recall of the incident on July 23rd is not crystal, it is just—

A It is crystal, but I would stay away from the table because the tables had three dollar movies and they wouldn't sell so I wouldn't steal them.

Q So when Ms. Zahn says she picked up the remnants from this table and they were movies that were on sale at that table, she is mistaken?

A I don't—I can't say. I can't call no one a liar, but I tell you I had remnants all over the store. As I moved, I picked and choose [sic]. I pierced the cellophane and tossed the cardboard and I stuffed them in my bag. So I left remnants, as you say, all over the store.

¶ 6. Johnson also testified, contrary to Zahn's testimony, about what she said to him as he left the store, setting off the security device.

Q . . . Do you remember Ms. Zahn asking you what was in the bag before you hit the security buzzer?

A That is not true at all.

Q That just didn't happen?

A That just didn't happen.

Q So she is lying about that?

A That is her version, ma'am, I can't call her a liar.

Q She is just not telling the truth, correct?

A If you want to insist, that didn't happen.

¶ 7. Johnson's counsel did not object to the line of questioning, nor did the circuit court intervene. The jury found Johnson guilty of one count of armed robbery, one count of robbery with threat of force, one count of attempted armed robbery, and three counts of felony bail jumping, and he was sentenced accordingly. Johnson filed a postconviction motion, arguing that the circuit court erroneously exercised its discretion by allowing the prosecutor, on cross-examination, to seek his opinion on the truthfulness of the State's witness, Zahn. Johnson also argued that he was denied effective assistance of counsel because his trial counsel failed to object to what he termed the prosecutor's "improper cross-examination." The circuit court denied Johnson's motion. Johnson appealed, and the court of appeals affirmed. We accepted Johnson's petition for review.

¶ 8. The issue here involves what has been described as conflicting court of appeals decisions regarding the admissibility of testimony that purportedly gives an opinion about the truthfulness of another witness's testimony. *Cf. State v. Kuehl,* 199 Wis. 2d 143, 545 N.W.2d 840 (Ct. App. 1995); *State v. Jackson,* 187 Wis. 2d 431, 523 N.W.2d 126 (Ct. App. 1994); *Haseltine,* 120 Wis. 2d 92. We accepted review in part to clarify the law in this area.

## II. DISCUSSION

A. Standard of Review

¶ 9. Whether the circuit court erred in permitting the questions to which Johnson now objects is a discretionary decision that we will not overturn unless the court's discretion was erroneously exercised. *See Lease*

*Am. Corp. v. Insurance Co. of N. Am.,* 88 Wis. 2d 395, 402, 276 N.W.2d 767 (1979).

¶ 10. Whether Johnson's trial counsel was ineffective for failing to object to the prosecutor's cross-examination of Johnson and whether Johnson was prejudiced are mixed questions of fact and law. *See State v. (Edward) Johnson,* 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990); *State v. Pitsch,* 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). We will uphold a circuit court's findings of fact unless they are clearly erroneous. *Johnson,* 153 Wis. 2d at 127; *Pitsch,* 124 Wis. 2d at 634. However, questions regarding the deficiency of counsel's performance or its prejudicial effect are questions of law that we review de novo. *Johnson,* 153 Wis. 2d at 128; *Pitsch,* 124 Wis. 2d at 634.

B. Ineffective Assistance

¶ 11. We follow a two-step approach in reviewing an ineffective assistance of counsel claim. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *Johnson,* 153 Wis. 2d at 127. A defendant must prove both that his or her attorney's performance was deficient and that the deficient performance was prejudicial. *Strickland,* 466 U.S. at 687; *Johnson,* 153 Wis. 2d at 127. We will not determine that an attorney's performance was deficient unless the attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Johnson,* 153 Wis. 2d at 127 (quoting *Strickland,* 466 U.S. at 687). Additionally, we review an attorney's performance with deference, and there is a presumption that counsel acted reasonably and within professional norms. *Johnson,* 153 Wis. 2d at 127. When deficient performance has been shown, it must also be prejudicial in

order to warrant reversal. Therefore, a defendant must show that, but for his or her attorney's errors, there is a "reasonable probability" the result of the proceeding would have been different. *Johnson,* 153 Wis. 2d at 129 (citing *Strickland,* 466 U.S. at 694). Though this is a two-part analysis, each part is independent. It does not matter which part is analyzed first. *Johnson,* 153 Wis. 2d at 128. *See Strickland,* 466 U.S. at 697.

¶ 12. In this case, whether Johnson's trial counsel's performance was deficient depends on whether the prosecutor's cross-examination was improper such that Johnson's counsel should have objected to it. The State argues that there are two lines of cases, one that addresses questioning of expert witnesses, as occurred in *Haseltine,* and another that addresses questioning of eye-witnesses, such as occurred in *Jackson.* Johnson contends the way in which he was questioned violates both *Haseltine* and *Kuehl.* He points out that *Kuehl* involved the questioning of an eye-witness.

¶ 13. We agree with the State that two lines of cases have developed that address a witness being questioned about another witness's testimony: those cases that arise from the testimony of an expert witness elicited on direct examination and those cases that focus on eye-witness testimony brought out in cross-examination. In *Haseltine,* the court of appeals concluded that it was improper for a psychiatrist to give his opinion that the victim, who claimed to have been sexually assaulted by her father, was an incest victim, as that was tantamount to his testifying that she was telling the truth. *Haseltine,* 120 Wis. 2d at 96. In *State v. Romero,* 147 Wis. 2d 264, 432 N.W.2d 899 (1988), we also reviewed the testimony of expert witnesses. There,

a police officer and a social worker were permitted to testify about their evaluations of the victim's truthfulness. *Romero,* 147 Wis. 2d at 266. We held it was error because the testimony permitted expert witnesses to usurp the jury's role in determining the credibility of the only witness against Romero. *Romero,* 147 Wis. 2d at 278. The opinion of an expert witness about whether another competent witness is telling the truth serves no useful purpose, and may be detrimental to the process because the jury does not need any expert assistance in assessing credibility. *See* 7 Daniel D. Blinka, *Wisconsin Practice, Wisconsin Evidence* § 608.3 (2d ed. 2001); *see also Haseltine,* 120 Wis. 2d at 96 (stating that an expert witness's opinion, "with its aura of scientific reliability, creates too great a possibility that the jury abdicated its fact-finding role to the [expert]").

¶ 14. The court of appeals has addressed defendants' claims that witnesses have improperly testified about the truthfulness of another witness in the second line of cases: those dealing with the cross-examination of an eye-witness to the crime.[2] *State v. Bolden,* 2003 WI App 155, 265 Wis. 2d 853, 667 N.W.2d 364; *Kuehl,* 199 Wis. 2d 143; *Jackson,* 187 Wis. 2d 431.

---

[2] *Cf. State v. Snider,* 2003 WI App 172, ¶ 27, 266 Wis. 2d 830, 668 N.W.2d 784 (concluding that permitting a detective to testify to what he believed at the time he was conducting his investigation was not testimony about whether Snider or the victim was telling the truth at trial); *State v. Smith,* 170 Wis. 2d 701, 490 N.W.2d 40 (Ct. App. 1992), *cert. denied,* 507 U.S. 1035 (1993) (explaining that a detective's testimony about what happened during his interrogation of a witness and the reasons for the questions he asked then was an explanation of what had transpired during the investigation and therefore not improper).

¶ 15. In *Jackson,* the court of appeals determined that the State's cross-examination of the defendant, who had given eye-witness testimony, did not violate the *Haseltine* rule, even though Jackson apparently was asked to restate the testimony of previous witnesses and asked if those witnesses were lying. *Jackson,* 187 Wis. 2d at 437–38. The court of appeals explained that such cross-examination may appear, at first blush, to violate the rule set out in *Haseltine;* however, the court concluded:

> a closer examination of the purpose and effect of the testimony reveals that these questions were solely to impeach Jackson's credibility. In asking these questions, the prosecution was highlighting the inconsistencies between Jackson's testimony and the testimony of other witnesses in an effort to impeach Jackson and to see if he had any explanation for the differences in the testimony. Allowing the questioning, given its intended purpose and effect, was not violative of *Haseltine.*

*Id.* at 437–38. This same analysis of eye-witness testimony appears in *Bolden,* where the court of appeals said the prosecutor's cross-examination was within permissible bounds. *Bolden,* 265 Wis. 2d 853, ¶ 6. The exchange between the prosecutor and the defendant in *Bolden* was as follows:

Q: So if I understand, Mr. Bolden, out of the witnesses we heard in this trial, [the victim] is either lying or mistaken about the fact[3] that you guys had this mutually agreed-upon fight, is that fair to say?

A: That's fair.

---

[3] At this point, the State is referencing Bolden's version of the events.

Q: And [the witness to the incident] is mistaken in that you never were on top of [the victim] and that you never were choking [the victim], is that fair to say?

A: That's fair to say.

Q: And that [the witness to the incident] is mistaken in the sense that you weren't driving around on Meinecke shortly before this altercation with [the victim], is that fair to say?

A: Right.

. . . .

Q: And that [the police sergeant who apparently investigated the incident] is mistaken when you mentioned anything about robbing [the victim]?

A: Right.

*Id.,* ¶ 4. The court of appeals in *Bolden* concluded that this cross-examination was permissible because it was not designed, like the challenged testimony in *Romero* and *Haseltine,* to bolster the credibility of witnesses. *Id.,* ¶ 7. The court further explained that it had no tendency to usurp the jury's function; "indeed, if anything, [the questioning helped] the jury evaluate each witness's demeanor." *Id.,* ¶ 8. In both *Jackson* and *Bolden,* the cross-examination was directed at impeaching a witness about an event the witness claimed to have seen.

¶ 16. In between the *Jackson* and *Bolden* decisions, the court of appeals also decided *Kuehl*.[4] In *Kuehl,* the prosecutor on cross-examination confronted the defendant with parts of the victim's testimony that conflicted with the defendant's version of events. *Kuehl,* 199 Wis. 2d at 147. The court determined that the prosecutor's continued use of the statement, "She must be mistaken; is that correct?" resulted in the defendant being asked to testify about the truthfulness of another witness, and thus it violated *Haseltine. Kuehl,* 199 Wis. 2d at 149. In the end, though, the court of appeals concluded that in Kuehl's case such questioning amounted to harmless error and it affirmed the conviction. *Id.* at 152.

¶ 17. The court in *Kuehl* stated that *Haseltine* (where a witness gave his expert opinion) and *Jackson* (where an eye-witness testified about what he claimed to have seen) conflicted, and it concluded that because of that perceived conflict, it was "free to follow the decision which [it] conclude[s] is correct." *Kuehl,* 199 Wis. 2d at 149. The court gave no authority for this proposition; and we know of none. Therefore, any language in *Kuehl* that purports to overrule or undermine *Jackson* should not be accorded any precedential value in the future.

¶ 18. It is our goal that the court of appeals speak with a unified voice, *see Cook v. Cook,* 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997), and it generally achieves that goal exceedingly well. However, when a perceived

---

[4] Both *State v. Jackson,* 187 Wis. 2d 431, 523 N.W.2d 126 (Ct. App. 1994), and *State v. Bolden,* 2003 WI App 155, 265 Wis. 2d 853, 667 N.W.2d 364, were decided by the same court of appeals district.

conflict arises, which is understandable given the huge volume of cases the court of appeals so capably handles, a certification to this court that points out the perceived conflict will best serve the public interest and will also aid this court in its law developing and clarifying function. *See id.* However, overruling an earlier court of appeals decision is not an option.

¶ 19. We perceive no conflict between the *Haseltine* and *Romero* line of cases and those headed by *Jackson* and *Bolden.* In the *Haseltine* line, the objected to testimony is simply bolstering another witness's testimony of an event about which the expert witness has no personal knowledge. It is generally done on direct examination and usurps the jury's role as the "lie detector in the courtroom." *See Haseltine,* 120 Wis. 2d at 96. The jury can independently determine the credibility of each witness, *see Romero,* 147 Wis. 2d at 278, and does not require an expert witness to assist it with that determination.

¶ 20. By contrast, in the *Jackson* line of cases, two witnesses are testifying about an event that both claim to have seen, and their testimony conflicts. The purpose[5] and effect of the cross-examination of the second

---

[5] In *State v. Kuehl,* the court says that, "[i]t is not the purpose of the question which controls the admissibility issue; *rather, it is whether the witness being questioned has any basis, foundation or knowledge on which to premise a belief that another witness is telling the truth.* " 199 Wis. 2d 143, 150, 545 N.W.2d 840 (Ct. App. 1995) (emphasis in original). We do not agree that the purpose behind the question cannot control the admissibility of the resulting testimony. *See, e.g., State v. Kutz,* 2003 WI App 205, ¶ 36, 267 Wis. 2d 531, 671 N.W.2d 660 (explaining that testimony that would be hearsay does not fall within that category of testimony if it is not offered for the truth

witness is to test that witness's credibility through his or her demeanor and answers to questions. It aids the jury in its truth-finding function. *See* Wis. Stat. § 906.07 (2001–02) (stating the credibility of any witness may be attacked by any party). The testimony elicited by the prosecutor in *Bolden* and *Jackson* was not placed before the jury to bolster the credibility of the other witnesses. Instead, cross-examination was used to highlight the inconsistencies in the testimony, and give the witness an opportunity to explain those inconsistencies. *Bolden,* 265 Wis. 2d 853, ¶ 8; *Jackson,* 187 Wis. 2d at 437–38. As the court of appeals concluded, the questions posed "were solely to impeach [the defendant's] credibility." *Jackson,* 187 Wis. 2d at 437. Such questions may help the jury assess the credibility of witnesses. *Bolden,* 265 Wis. 2d 853, ¶ 8. Such a technique is permissible cross-examination.[6]

of the matter asserted); *State v. Kuntz,* 160 Wis. 2d 722, 746, 467 N.W.2d 531 (1991) (concluding that the receipt of other acts evidence offered for the purpose of showing motive or plan is permissible).

[6] Our conclusion is consistent with the results reached in other jurisdictions. *See State v. Hart,* 15 P.3d 917, 924 (Mont. 2000) (indicating that not all "was the other witness lying" questions are improper, and in some cases such questions can clarify a line of testimony or assist in evaluating the credibility of a defendant who says everyone else is lying). *See also State v. Morales,* 10 P.3d 630, ¶ 13 (Ariz. Ct. App. 2000); *Whatley v. State,* 509 S.E.2d 45, 51 (Ga. 1998), *cert. denied,* 526 U.S. 1101 (1999); *State v. Pilot,* 595 N.W.2d 511, 518 (Minn. 1999); *People v. Overlee,* 666 N.Y.S.2d 572, 577 (N.Y. App. Div. 1997). We do recognize that there are some jurisdictions that have adopted a bright-line rule prohibiting this sort of questioning, similar to the court of appeals decision in *Kuehl, supra;* however, we are not persuaded by their reasoning. *See, e.g., Allen v. United States,* 837 A.2d 917, 920 (D.C. Cir. 2003); *State v. Singh,* 793

¶ 21. Having established the parameters of *Haseltine, Romero* and *Jackson,* we turn now to applying them to the facts of this case. Here both witnesses, Zahn and Johnson, were eye-witnesses to the events that occurred at Blockbuster Video. Zahn testified as to her recollection of the events during the State's case-in-chief. When Johnson testified on direct examination, he gave a similar version of some of the events as Zahn had. However, on cross-examination, his testimony began to conflict not only with Zahn's, but also with his own direct testimony.

¶ 22. For example, Zahn said she saw Johnson take videos from the resale table at the front of the store, and that several of the remnants she later found were from videos that had been at the resale table. On direct examination, Johnson admitted he took videos from the resale table. However, on cross-examination, he said he stayed away from the resale table because the videos on it did not have enough of a street value on resale to interest him in them. When he was asked if Zahn was "mistaken" in her testimony, Johnson responded, "I don't—I can't say. I can't call no one a liar . . . ." Johnson also testified, contrary to Zahn's testimony, that Zahn did not ask him what was in his bag before the security buzzer sounded as he went through it. He said, "That just didn't happen." The prosecutor responded, "So she is lying about that?" Johnson said, "That is her version, ma'am, I can't call her a liar."

A.2d 226, 236–39 (Conn. 2002); *State v. Graves,* 668 N.W.2d 860, 871–74 (Iowa 2003); *State v. Manning,* 19 P.3d 84, 100–01 (Kan. 2001); *Daniel v. State,* 78 P.3d 890, 904 (Nev. 2003), *cert. denied,* ___ S.Ct. ___ (May 17, 2004).

¶ 23. Based on this record, we conclude that the prosecutor's purpose was to undermine Johnson's credibility, by comparing Johnson's testimony with that of Zahn, both of whom were eye-witnesses to Johnson's acts at Blockbuster Video. The prosecutor was not attempting to bolster Zahn's credibility. As the court of appeals explained,

> The testimony challenged in *Jackson* and in the present case involved witnesses who were not experts testifying to the occurrence or non-occurrence of an event. Instead, the witnesses testified about their recollection of the events in question, and their recollection contradicted the testimony of another witness. In both cases, each witness was involved in the event and the purpose of the questioning was to highlight inconsistencies in testimony. This testimony did not detract from the jury's role as fact finder.

*State v. Johnson*, No. 02–2793, unpublished slip op. at ¶ 12, (Wis. Ct. App. July 15, 2003). There was nothing improper in the prosecutor's attempts to impeach Johnson's credibility.

¶ 24. Because we conclude there was nothing objectionable about the line of testimony Johnson claims was improper, we must also conclude that there was nothing deficient about his trial counsel's performance in failing to object to the questions.[7] Therefore, we conclude that Johnson was not denied effective assistance of counsel, and we affirm his convictions.[8]

---

[7] In its decision on Johnson's motion for postconviction relief, the circuit court said that had Johnson's counsel objected to the line of questioning, it would have overruled the objection.

[8] We decide today that it is permissible to cross-examine a witness to an event by asking the witness about another

## C. Admission of Evidence

¶ 25. Johnson also argues that the circuit court erroneously exercised its discretion in allowing the prosecutor, in her cross-examination, to question him regarding his opinion of the truthfulness of another witness. *See Romero,* 147 Wis. 2d at 278; *Haseltine,* 120 Wis. 2d at 96. The record reflects that Johnson's counsel did not object to this questioning, or to the circuit court's admission of the testimony. Without an objection, the issue of whether the circuit court properly exercised its discretion has not been preserved for appeal. *Romero,* 147 Wis. 2d at 274 (stating, "In order to preserve an issue for appeal as a matter of right, a party must object to the error at trial, stating the proper ground for the objection"). The circuit court has no duty to independently strike testimony that is inadmissible. *State v. Delgado,* 2002 WI App 38, ¶ 12, 250 Wis. 2d 689, 641 N.W.2d 490. However, even though this claimed evidentiary objection is not directly reviewed, we have tested the propriety of the testimony through Johnson's ineffective assistance of counsel claim that is grounded in the same sequence of questions and answers, where we concluded there was no deficient performance.

witness's testimony concerning the same event. We do not address the broader issue of whether it is permissible to cross-examine a witness about another witness's testimony based on the comparison of the professed personal knowledge of the two witnesses, which personal knowledge is based on something other than personal observations. Accordingly, this latter issue remains an open question.

## III. CONCLUSION

¶ 26. We conclude that the purpose and effect of the prosecutor's cross-examination of Johnson was to impeach Johnson's credibility, not to bolster the credibility of another witness, because both Johnson and the other witness were testifying to their personal observations about the same events. Therefore, the cross-examination of Johnson was permissible. Because we have concluded that the cross-examination was not improper, we also conclude that trial counsel's performance was not deficient for failing to object to it. And finally, we conclude that because Johnson did not object to his cross-examination, the issue of whether the circuit court erroneously exercised its discretion in permitting the questioning has not been preserved for appeal; however, we have reviewed the admission of this testimony in our review of Johnson's ineffective assistance of counsel claim. Accordingly, we affirm the order denying Johnson postconviction relief and affirm the judgments of conviction.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 27. DIANE S. SYKES, J., did not participate.

¶ 28. ANN WALSH BRADLEY, J. (concurring). I agree with the majority that Johnson was not denied effective assistance of counsel in this case. He has failed to establish prejudice sufficient to undermine confidence in the outcome. *Strickland v. Washington,* 466 U.S. 668, 694 (1984).

¶ 29. I write separately, however, because I fear that the majority has opened the door to a line of questioning which invades the province of the jury, is of no probative value, and may prove misleading. In the

end, the majority has fashioned a test embraced by no other jurisdiction. It exchanges a bright line rule for one that may prove difficult to apply. Accordingly, I respectfully concur.

¶ 30. This case involves a defendant being asked by a prosecutor whether one of the State's witnesses was "lying" when she gave testimony incriminating the defendant. Eschewing the bright line rule of *State v. Kuehl*, 199 Wis. 2d 143, 150, 545 N.W.2d 840 (Ct. App. 1995), the majority concludes that the purpose and effect of the prosecutor's cross-examination of Johnson was to impeach him, not to bolster the credibility of another witness. Majority op., ¶ 2. It thus deems the cross-examination permissible. *Id.*

¶ 31. In the criminal context, "were they lying" questions are generally questions posed by the prosecutor to a criminal defendant during cross-examination. *State v. Pilot*, 595 N.W.2d 511, 516, n. 1, (Minn. 1999). Typically, the prosecutor will first ask if the defendant heard the testimony of one or more of the state's witnesses on direct examination. *Id.* Then, the prosecutor will ask if the witnesses' testimony was accurate. *Id.* If the defendant states that the witnesses' testimony was not accurate, the prosecutor will ask the defendant whether the witnesses were lying. *Id.*

¶ 32. Of the states that have addressed the issue, a vast majority consider such questioning improper. *See, e.g., State v. Singh*, 793 A.2d 226, 239 (Conn. 2002); *Knowles v. State*, 632 So. 2d 62, 65 (Fla. 1993); *People v. Riley*, 379 N.E.2d 746, 753 (Ill. App. 1978); *State v. Graves*, 668 N.W.2d 860, 873 (Iowa 2003); *State v. Manning*, 19 P.3d 84, 100 (Kan. 2001); *Commonwealth v. Martinez*, 726 N.E.2d 913, 923–24 (Mass. 2000); *Daniel v. State*, 78 P.3d 890, 904 (Nev. 2003); *State v. Flanagan*, 801 P.2d 675, 679 (N.M. App. 1990); *Burgess*

*v. State,* 495 S.E.2d 445, 447 (S.C. 1998); *State v. Emmett,* 839 P.2d 781, 787 (Utah 1992); *State v. Casteneda-Perez,* 810 P.2d 74, 79 (Wash. Ct. App. 1991); *Beaugureau v. State,* 56 P.3d 626, 636 (Wyo. 2002).[1]

¶ 33. Similarly, a number of federal circuits have condemned this cross-examination tactic. *See, e.g., United States v. Sanchez,* 176 F.3d 1214, 1220 (9th Cir. 1999); *United States v. Boyd,* 54 F.3d 868, 871 (D.C. Cir. 1995); *United States v. Akitoye,* 923 F.2d 221, 224 (1st Cir. 1991); *United States v. Richter,* 826 F.2d 206, 208 (2d Cir. 1987).

¶ 34. Several reasons underlie the disapproval of such questioning. First, the function of weighing the credibility of witnesses is exclusively in the province of the jury. The Wisconsin Criminal Jury Instructions recognize this, stating:

> It is the duty of the jury to scrutinize and to weigh the testimony of witnesses and to determine the effect of the evidence as a whole. You are the sole judges of the credibility, that is, the believability, of the witnesses and of the weight to be given to their testimony.

Wis. JI—Criminal 300.

¶ 35. Likewise, Wisconsin courts and commentators echo this well-established truth:

> The starting point is the venerable principle that the jury is the sole judge of the credibility of witnesses. Although the jury is sometimes characterized as the "lie-detector" in the courtroom, more often it functions

---

[1] Indeed, it appears that only two states have adopted an unequivocal rule that the question "Is the witness lying?" is proper. *See Whatley v. State,* 509 S.E.2d 45, 51 (Ga. 1998), *cert. denied,* 526 U.S. 1101; *Fisher v. State,* 736 A.2d 1125, 1162–63 (Md. App. 1999).

to determine the subtle shadings which distinguish inaccurate from accurate testimony. *In order to preserve the jury's role, the courts have consistently held that a witness may not testify that another mentally and physically competent witness is telling the truth.*

7 Daniel D. Blinka, *Wisconsin Practice: Wisconsin Evidence* § 608.3, at 402 (2d ed. 2001) (citing *State v. Romero,* 147 Wis. 2d 264, 278, 432 N.W.2d 899 (1988); *State v. Haseltine,* 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984); *Schleiss v. State,* 71 Wis. 2d 733, 745, 239 N.W.2d 68 (1976)) (emphasis added).

¶ 36. Second, this type of confrontational examination has no probative value because it does nothing to assist the jury in assessing witness credibility in its fact-finding mission. *Pilot,* 595 N.W.2d at 518. The defendant's opinion on another witness's credibility is irrelevant. Moreover, such tactics generally are not intended to seek information at all, but instead to score rhetorical points with the jury. As one court noted, "the predominate, if not sole, purpose of such questioning is simply to make the defendant look bad" since "the accused's answer is unimportant."[2] *Graves,* 668 N.W.2d at 872.

¶ 37. Third, such questioning may mislead the jury into believing that either the defendant or the witness lied. This, in turn, creates the risk that, in order to acquit the defendant, the jury must find that the witness has lied. *Singh,* 793 A.2d at 237. *See also Emmett,* 839 P.2d at 787 ("The prejudicial effect of such a question lies [partly] in the fact that . . . it puts the

---

[2] The United States Supreme Court reminds us that a prosecutor should prosecute with earnestness and vigor but "while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88 (1935).

defendant in the untenable position of commenting on the character and motivation of another witness who may appear sympathetic to the jury.").

¶ 38. The fact is that inconsistencies between the testimony of two or more witnesses do not prove that one of the witnesses has committed perjury. Rather, differences of perception and memory can result in conflicting testimony without giving rise to an implication of deliberate, willful falsehood.[3] The *Graves* court explained this, noting:

> People have different perceptions of the same conversation that affect how and what they remember. Perhaps there was a misunderstanding of what was said; perhaps one person was distracted and did not fully or correctly hear the words uttered by the other person. People sometimes hear what they want to hear. It is unjust to make the defendant give an opinion as to who is lying when, in fact, it is possible that neither witness has deliberately misrepresented the truth.

668 N.W.2d at 872.

¶ 39. Despite these concerns, the majority maintains that such a tactic is permissible cross-examination. Majority op., ¶ 21. It dismisses the contrary precedent as unpersuasive. *Id.,* ¶ 21, n. 5. Additionally, the majority insists that its conclusion "is consistent with the results reached in other jurisdictions." *Id.* (citing *State v. Morales,* 10 P.3d 630 (Ariz. Ct. App. 2000); *State v. Hart,* 15 P.3d 917 (Mont. 2000); *Pilot,* 595 N.W.2d at 511; *Whatley v. State,* 509 S.E.2d 45

---

[3] As Johnson notes, there is nothing inherently inconsistent about his testimony, in context, as it relates to testimony given by the state's witness, Ms. Zahn. It is, for example, possible that Ms. Zahn asked him what he had in the bag. So, too, it is possible that he simply did not hear her. Under this analysis, neither Ms. Zahn nor Johnson would be lying.

(Ga. 1998), *cert. denied,* 526 U.S. 1101; *People v. Over-lee,* 666 N.Y.S.2d 572 (N.Y. App. Div. 1997)).

¶ 40. The majority's reliance on other jurisdictions is misplaced. None of the courts to which it cites considers the "purpose and effect" of the prosecutor's cross-examination in determining whether it is permissible. Instead, they either allow such questioning unequivocally, *Whatley,* 509 S.E.2d at 51, or allow it when the only possible explanation for the inconsistent testimony is deceit or when a defendant has opened the door by testifying about the veracity of other witnesses on direct examination. *See Morales,* 10 P.3d at 633; *Pilot,* 595 N.W.2d at 518; *Hart,* 15 P.3d at 924; *Overlee,* 666 N.Y.S.2d at 575.

¶ 41. There is good reason why no other jurisdiction has embraced the majority's test. Discerning the purpose behind a particular line of questions may prove more difficult in application than the majority acknowledges. In each case, judges will have to ask themselves: was this an attempt to bolster credibility or was this an attempt to impeach the defendant? These purposes, of course, are two sides of the same coin. Often they will both be at play, as the State concedes is apparent in the present case.

¶ 42. Highlighting inconsistencies in testimony may be accomplished by means other than asking one witness whether another witness is lying. While I acknowledge that some other questions, asked with certain inflections, may come close to that line, there is no doubt that the question here has crossed it.

¶ 43. If there is a saving grace to the majority opinion, it is that judges remain free to control the mode and order of interrogation and presentation. Wisconsin Stat. § 906.11 (2001–02) requires judges to exercise control of their courtrooms so as to (a) make

651

the interrogation effective for the ascertainment of truth, (b) avoid needless consumption of time, and (c) protect witnesses from harassment.[4] While under the majority's new test attorneys are not precluded from asking whether another witness is lying, circuit courts are not required to permit this mode of interrogation.

¶ 44. Even without a bright line rule prohibiting the "were they lying" question, judges should preclude this mode of interrogation under Wis. Stat. § 906.11 (2001–02) because a witness's opinion on another's credibility is irrelevant, and is often offered not to ascertain the truth but rather to harass. Even if it is deemed to be relevant, and thus have some probative value, it should be precluded under Wis. Stat. § 904.03 (2001–02) because such minimal value is substantially outweighed by the danger of misleading the jury or unfair prejudice.[5]

---

[4] Wisconsin Stat. § 906.11 (2001–02) provides in relevant part:

> (1) CONTROL BY JUDGE. The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to do all of the following:
>
> (a) Make the interrogation and presentation effective for the ascertainment of the truth.
>
> (b) Avoid needless consumption of time.
>
> (c) Protect witnesses from harassment or undue embarrassment.

[5] Wisconsin Stat. § 904.03 (2001–02) provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

652

¶ 45. In the end, I view the majority's opinion as a step backwards in our pursuit of promoting civility in the courtrooms of this state. Although the majority's new test takes away a bright line rule, judges remain armed with the rules of evidence in order to exercise the appropriate control in their own courtrooms. Because I fear that the majority has opened the door to a line of questioning which invades the province of the jury, is of no probative value, and may prove misleading, I urge judges to use those rules to preclude these questions. Accordingly, I respectfully concur.

¶ 46. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this opinion.

---

These rules of evidence referenced are not meant to be an exhaustive list but rather illustrative of rules that should be used to preclude the "were they lying" questions.